FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 06, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CHRISTINE ELAINE COX,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 2:16-CV-00330-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 17. Ms. Cox brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II and her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth

below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

**DENIES** Ms. Cox's Motion for Summary Judgment.

## I. Jurisdiction

Ms. Cox filed her applications for Supplemental Security Income and Disability Insurance Benefits on October 15, 2012. AR 12, 172-87. Her alleged onset date of disability is September 28, 2011. AR 12, 120, 125, 174. Ms. Cox's application was initially denied on December 20, 2012, AR 108-15, and on reconsideration on April 19, 2013, AR 120-31.

A hearing with Administrative Law Judge ("ALJ") Moira Ausems occurred on February 24, 2015. AR 31-61. On May 11, 2015, the ALJ issued a decision finding Ms. Cox ineligible for disability benefits. AR 12-26. The Appeals Council denied Ms. Cox's request for review on July 26, 2016, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Cox timely filed the present action challenging the denial of benefits, on September 22, 2016. ECF No. 3. Accordingly, Ms. Cox's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

1  can be expected to last for a continuous period of not less than twelve months." 42

2  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

3  under a disability only if the claimant's impairments are of such severity that the

4  claimant is not only unable to do her previous work, but cannot, considering

5  claimant's age, education, and work experience, engage in any other substantial

6  gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

7       The Commissioner has established a five-step sequential evaluation process

8  for determining whether a claimant is disabled within the meaning of the Social

9  Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

10 *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

11      Step one inquires whether the claimant is presently engaged in "substantial

12 gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

13 activity is defined as significant physical or mental activities done or usually done

14 for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

15 substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§

16 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

17      Step two asks whether the claimant has a severe impairment, or combination

18 of impairments, that significantly limits the claimant's physical or mental ability to

19 do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

20 impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant Gallo in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Ms. Cox was 43 years old on the date the application was filed. AR 24, 174, 181. She has at least a high school education. AR 17, 24. Ms. Cox is able to communicate in English. AR 24. Ms. Cox has past relevant work as a furniture sales person, floor coverings sales person, and a home restoration services cleaner. AR 24, 36-37.

## V.    The ALJ's Findings

The ALJ determined that Ms. Cox was not under a disability within the meaning of the Act from September 28, 2011, through the date of the ALJ's decision. AR 12, 25.

**At step one**, the ALJ found that Ms. Cox had not engaged in substantial gainful activity since September 28, 2011 (citing 20 C.F.R. §§ 404.1571 *et* seq. and 416.971 *et seq.*). AR 14.

**At step two**, the ALJ found Ms. Cox had the following severe impairments: fibromyalgia; migraine headaches; depressive disorder, NOS; anxiety disorder, NOS; pain disorder associated with both psychological factors and a general medical condition; and personality disorder, NOS (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 14.

At **step three**, the ALJ found that Ms. Cox did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 15.

**At step four**, the ALJ found Ms. Cox had the residual functional capacity to perform light work, except: she can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk six hours in a an eight-hour workday and sit six hours in an eight -hour workday; she requires a sit-stand option up to five non-contiguous minutes per hour that would not involve leaving a workstation; she is

limited to frequent climbing of ramps and stairs, balancing, crouching, crawling, kneeling, and stooping; no climbing of ladders, ropes or scaffolds; avoid concentrated exposure to extreme hear, cold, noise, and vibrations; no exposure to unprotected heights or dangerous moving machinery; no commercial driving; no more than simple routine tasks; no more than occasional superficial contact with the general public. AR 17.

The ALJ determined that Ms. Cox is unable to perform any past relevant work. AR 24.

**At step five**, the ALJ found that, in light of her age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that she can perform. AR 24. Including parking lot attendant, agricultural produce sorter, and production assembler. AR 25.

## VI.    Issues for Review

Ms. Cox argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly discrediting Ms. Cox's subjective complaint testimony; and (2) improperly evaluating the medical opinion evidence.

\\

\\

# VII. Discussion

## A. The ALJ Properly Discounted Ms. Cox's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically

determinable impairments could reasonably be expected to produce the symptoms Ms. Cox alleges; however, the ALJ determined that Ms. Cox's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 18. The ALJ provided multiple clear and convincing reasons for discrediting Ms. Cox's subjective complaint testimony. AR 18-22.

First, the ALJ noted that Ms. Cox's activities did not support her allegations of total disability. AR 21. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ properly noted that Ms. Cox's allegations of disabling problems with chronic pain, inability to walk for more than five minutes, stand one-hour maximum, sit for up to 30-40 minutes, an inability to squat, an inability to bend over without losing her balance, and an inability to lift more than a gallon of milk are inconsistent with her daily activities and reported level of ability. AR 21, 47-49. In particular, the ALJ noted that Ms. Cox previously stated that she exercised regularly, did yard work, and walked significant distances. AR 18-21. As noted by the ALJ, Ms. Cox reported to her physician that she walked five miles per week on

a treadmill, and her physician noted that she was walking for one hour at a time at treadmill speeds ranging from 3.4 to 5 miles per hour, which indicates Ms. Cox was walking up to 35 miles per week. AR 19, 328. The ALJ noted that Ms. Cox stated she had been exercising; doing yard work, including taking down gooseberry bushes; did household chores, including laundry, dishes, and picking up clutter; hiking two to three miles; and flew on a plane. AR 16, 19, 21, 22, 304, 333, 381, 499, 453. These activities are very inconsistent with Ms. Cox's allegations of total disability.

Second, the ALJ detailed inconsistencies between Ms. Cox's allegations of total disability and the medical records demonstrating generally unremarkable, normal, or mild findings. AR 18-20. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan*, 242 F.3d at 1148. In particular, the ALJ noted that Ms. Cox's allegations of disabling pain and physical impairments were inconsistent with treatment records generally describing her as "in no acute distress" on almost every clinical examination, and her medical care providers consistently found her to have normal gait and station, no deformities, normal strength, and normal range of motion in her arms and legs.

AR 19, 20, 282, 294, 298, 301, 305, 309, 434, 450, 456, 531. Regarding Ms. Cox's alleged disabling mental conditions, the ALJ correctly noted that Ms. Cox's medical records demonstrate only occasional complaints of situational depression and what Ms. Cox described as "mild depression," and that Ms. Cox denied any depressive symptoms or any new or worsening problems. AR 20, 21, 380, 414, 464, 529.

The ALJ provided a detailed summary of the medical evidence, which is inconsistent with Ms. Cox's claims of complete disability, and Ms. Cox does not contend that the ALJ erred in this determination.

Third, the ALJ noted Ms. Cox repeatedly reported to her physician that her condition improved when following the medical treatment recommendations. AR 18-20. The ALJ noted Ms. Cox told her physician that she was doing well on her medication regimen; that her fibromyalgia symptoms seemed "to be getting better" with physical therapy; she later stated regular exercise and walking had improved her fibromyalgia symptoms; and she said her fibromyalgia felt better overall with physical exercise on a regular basis. AR 18-19, 280, 299, 304, 323 405, 407, 412. Her treating physician repeatedly recommended Ms. Cox continue exercising and to increase her activity level. *See* AR 19. An ALJ may find a claimant's symptom testimony not credible based on evidence of effective responses to treatment. *See*, *e.g.*, *Burch*, 400 F.3d at 681; 20 C.F.R. §§ 404.1529(c)(3), 416.1529(c)(3).

Fourth, the ALJ discredited Ms. Cox subjective complaints testimony due to her inconsistent statements and motivation for secondary gain. AR 20-21. As noted above, Ms. Cox testified that she is unable to walk for more than five minutes, stand one-hour maximum, or sit for up to 30-40 minutes. AR 21, 47-49. However she continuously reported being able to walk and hike long distances, do chores, fly on an airplane, and exercise daily. AR 16, 18-21, 22, 304, 328, 333, 381, 499, 453. The ALJ noted that Ms. Cox has given very inconsistent statements as to why she stopped working. AR 21. Ms. Cox stated she was fired from her last job for missing work for doctor's appointments. AR 21, 380. However, she also stated she had actually been laid off, and later stated she was laid off because her employer rotated employees every 90 days to avoid paying for insurance. AR 12, 21, 411, 516. The ALJ also stated that Ms. Cox had been far more focused on establishing entitlement to disability benefits rather than returning to work. AR 20-21. The ALJ noted that Ms. Cox had visited two different physicians, bringing with her a significant amount of paperwork, for the specific purpose of qualifying for disability benefits. AR 20-21, 300, 412. "An ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness." *Burch*, 400 F.3d at 680 (9th Cir. 2005); *See also Smolen*, 80 F.3d at 1284 (an ALJ may consider inconsistent statements or other testimony that appears less than candid in weighing credibility); *Matney ex rel. Matney v. Sullivan*, 981

F.2d 1016, 1020 (9th Cir. 1992) (upholding credibility finding where ALJ noted claimant's "well documented motivation to obtain social security benefits").

The ALJ detailed inconsistency in Ms. Cox's daily activities, inconsistent statements, inconsistency with the medical evidence, and improvement with treatment, all of which are supported by substantial evidence of record and are clear and convincing reasons to discredit a claimants credibility. *Smolen*, 80 F.3d at 1284.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Ms. Cox's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**B. The ALJ Properly Evaluated the Medical Opinion Evidence.**

**a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating

providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Dr. Serban Ionescu, M.D.

Dr. Ionescu is a treating physician who completed Department of Social and Health Services questionnaires on October 29, 2012, and February 10, 2014. AR 520-23, 525-27. Dr. Ionescu opined that Ms. Cox was limited to the performance of only part time work and she cannot stand or sit, bend over, reach, concentrate, or interact with people for more than one to ten hours per week. *Id.* Dr. Ionescu's opinion is contradicted by the opinions of Dr. Staley, Dr. Beaty, and Dr. Olson, as well as, Dr. Ionescu's own reports and Ms. Cox's actual abilities demonstrated through her daily activates.

The ALJ carefully considered Dr. Ionescu's opinions and did not completely discount them; however, the ALJ did not afford the opinions substantial weight. AR 23-24. The ALJ discounted Dr. Ionescu's opinions for multiple valid reasons. The ALJ noted that Dr. Ionescu's opinions did not set forth persuasive medical rationale for his extreme opinions; rather, he merely set forth an exact recitation of what Ms. Cox had told him when she presented the paperwork with the specific purpose of him complete it so she could qualify for disability benefits. AR 21, 23, 300, 520, 525. The opinions are almost entirely based on Ms. Cox's subjective complaints rather than clinical findings. AR 520-27. An ALJ may discount even a treating provider's opinion if it is based largely on the claimant's self-reports and

not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Furthermore, the opinions are contradicted not only by the minimal clinical findings suggesting debilitating limitations, they are also contradicted by contemporaneous medical records of normal and unremarkable conditions and by Ms. Cox's own reported abilities and activities. AR 23-24. As noted above, the medical records demonstrating generally unremarkable, normal, or mild findings. AR 18-19, 20, 282, 294, 298, 301, 305, 309, 434, 450, 456, 531. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999). Additionally, an ALJ may reject a doctor's opinion that is so extreme as to be implausible and not supported by any findings made by any other doctor. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In addition, Ms. Cox's reported activities are very inconsistent with the level of impairment suggested. For example, she reported that she walked five, and possibly up to 35, miles per week on a treadmill, she exercised, did yard work, took down gooseberry bushed, did chores, hiked two to three miles, and took a plane flight. AR 16, 19, 21, 22, 304, 328, 333, 381, 499, 453. An ALJ may

properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Ionescu's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Ionescu's opinion.

### c. Dr. Justin Garrett, D.O.

Dr. Garrett is an examining doctor who examined Ms. Cox and provided a medical opinion in April 2013. AR 379-84. Dr. Garrett opined that Ms. Cox was unimpaired in her ability to perform simple and repetitive tasks; unimpaired in her ability to perform work activities on a consistent basis without special or additional instruction; mildly impaired in her ability to accept instructions from supervisors and to interact with coworkers and the public; moderately limited in her ability to

maintain regular attendance and complete a normal workday without interruptions from a psychiatric condition; and markedly impaired in her ability to deal with the usual stress encountered in the workplace. AR 383. Dr. Garrett also provided a diagnostic impression of a panic attack disorder with agoraphobia. *Id*. Dr. Garrett's opinion is contradicted by the opinion of Dr. Beaty, the medical reports in the record, and the opinion's own internal inconsistency.

The ALJ afforded substantial weight to the opinion that Ms. Cox was unimpaired in her ability to perform simple and repetitive tasks; unimpaired in her ability to perform work activities on a consistent basis without special or additional instruction; mildly impaired in her ability to accept instructions from supervisors and to interact with coworkers and the public. AR 22. The ALJ afforded little weight to the opinion that Ms. Cox was moderately limited in her ability to maintain regular attendance and complete a normal workday without interruptions from a psychiatric condition; and markedly impaired in her ability to deal with the usual stress encountered in the workplace. *Id*. Additionally, the ALJ afforded no weight to the diagnostic impression of a panic disorder with agoraphobia. *Id*. In discounting a portion of Dr. Garrett's opinion, the ALJ provided multiple valid reasons for doing so.

As noted by the ALJ, the discounted portion of the opinion is unsupported by objective medical findings of mental status abnormality, and it is inconsistent

with the benign mental status findings noted by Ms. Cox's treating providers. AR 22. Indeed, the longitudinal medical records consistently contain only benign mental status examinations and minimal subjective references to an unspecified anxiety disorder, which fail to provide any objective corroborating evidence of anxiety-related symptoms. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603. Additionally, an ALJ may reject a doctor's opinion that is not supported by any findings made by any other doctor. *See Rollins*, 261 F.3d at 856. Indeed, Dr. Garrett's own mental status assessment does not support the limitations opinioned. Dr. Garrett stated he did "not believe she has a mood, psychotic, substance use, or cognitive disorder;" "[s]he did well on mental status testing and she was very pleasant; on gross examination, I believe her intelligence is above average;" and "I believe the claimant's problem is treatable." AR 383. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Garrett's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Garrett's opinion.

### d. Dr. Kayleen Islam-Zwart, Ph.D.

Dr. Islam-Zwart is an examining doctor who performed a psychological/psychiatric evaluation in December 2014. AR 510-18. Dr. Islam-Zwart did not opined that Ms. Cox was only mildly or moderately limited in every category of basic work activity, that Ms. Cox's mental status was within normal limits in every category, and provided a diagnostic impression of panic disorder with agoraphobia and post-traumatic stress. AR 510, 513, 517. Dr. Islam-Zwart's opinion is contradicted by the opinion of Dr. Beaty, the medical reports in the record, and the opinion's own internal inconsistency.

The ALJ afforded no weight to the diagnostic impressions provided by Dr. Islam-Zwart. AR 23. The ALJ provided multiple valid reasons for assigning no weight to the opinion. Dr. Islam-Zwart notes that she did not have the benefit of reviewing the other medical reports or submissions, or longitudinal record; rather, she based her report primarily on Ms. Cox's subjective complaints and reports. AR 510-18. An ALJ may discount a treating provider's opinion if it is based largely on

the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162.

Additionally, the opinion is unsupported by corroborating object medical findings of mental status abnormality, and it is inconsistent with the benign mental status findings noted by Ms. Cox's treating providers. AR 20, 21, 23, 380, 414, 464, 529. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 602-603. Additionally, an ALJ may reject a doctor's opinion that is not supported by any findings made by any other doctor. *See Rollins*, 261 F.3d at 856. The diagnostic impressions are also unsupported by Dr. Islam-Zwart's objective notes and opinions found in the examination. Dr. Islam-Zwart found only mild and moderate limitations in every category of basic work activity. AR 512. Dr. Islam-Zwart also opined that Ms. Cox's mental status was within normal limits in every category. AR 513. Dr. Islam-Zwart further stated upon examination that Ms. Cox scores did not reflect impairment, her scores fell within normal limits, and her mental control was within normal limits. AR 517. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Islam-Zwart's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Islam-Zwart's opinion.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 17,** is **GRANTED.**

///

///

///

///

///

3. Judgment shall be entered in favor of Defendant and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order,

forward copies to counsel and **close the file**.

**DATED** this 6th day of February, 2017.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge